## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 07-81 (CKK) |
| | ) | |
| DARRYL KNIGHT | ) | |
| | ) | |

## MOTION TO SUPPRESS EVIDENCE,
## INCORPORATED MEMORANDUM IN SUPPORT THEREOF, AND
## REQUEST FOR EVIDENTIARY HEARING

Darryl Knight, by his attorney, respectfully moves this court to suppress physical evidence, statements, and any other tainted evidentiary "fruits" resulting from the investigation, searches, and arrest in this case. This motion is made pursuant to FED. R. CRIM. P. 12(b)(3), and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.

### STATEMENT OF FACTS

Mr. Knight was charged, in a four-count indictment filed March 22, 2007, with unlawful possession with intent to distribute 50 g or more of cocaine base, unlawful possession with intent to distribute cannabis, using a firearm during a drug trafficking offense, and unlawful possession of a firearm.

According to the law enforcement reports filed in this case, on February 2, 2007, officers executed a search warrant of 1420 Staples Street NE #3 in Washington, D.C. Darryl Knight and Katreada Thomas were present when the officers arrived. Upon searching the apartment, the officers allegedly found marijuana, cigarettes, currency, mail matter, some loose white rocks, and

1

a scale.  The officers then went into the attic of the apartment building and allegedly found loose green weed, chunks of white rock, currency, and two semi-automatic weapons with magazines and rounds.

While executing the warrant, officers elicited statements from Mr. Knight.  These statements occurred while Mr. Knight was detained but before his Miranda rights were read.

## ARGUMENT

**I.    THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT DOES NOT ESTABLISH PROBABLE CAUSE TO SEARCH THE PREMISES.**

The Fourth Amendment provides:

. . . and no Warrants shall issue, but upon probable cause, supported by oath or affirmation . . . .

The test for probable cause for the issuance of a search warrant is whether the facts presented to the magistrate establish a "substantial probability" that the items sought will be found at the location sought to be searched.  Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983).

In the present case, the affidavit establishes only that on a single occasion, within 72 hours of February 2, 2007, an unspecified "special employee" entered the apartment and made a single sale of narcotics.  The defendant respectfully submits that an allegation of a single sale at an unspecified time by an unspecified person up to three days prior to issuance of the warrant does not establish probable cause to believe that there are narcotics presently in that location.

In United States v. Richardson, 861 F.2d 291 (D.C. 1988), this Circuit noted that it is not clear that a single buy itself is sufficient to establish probable cause to search a location, absent further corroboration.  In Richardson, the affidavit recounted two (2) buys allegedly made by an

2

informant from 3531 Jay Street, N.E., Apartment 1, here in the District.  The affiant then stated that he had observed the informant walking into the described location without talking with anyone else and shortly returned to the affiant with the narcotics.  The language in the affidavit indicating that the affiant had seen the informant enter and leave "the described location" was false, since the evidence revealed that the affiant had only seen the informant enter the apartment complex.  On appeal the defendant contended that the false statement in the affidavit vitiated probable cause under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  The defendant's argument was rejected because of his failure to show that the admittedly false statement was made knowingly and intentionally or in reckless disregard for the truth.  <u>Richardson</u> at 294.  However, the court did note that "it is unclear whether the fact of the controlled buy alone is sufficient under such circumstances to demonstrate probable cause without other corroborating evidence."  <u>Id</u>.  The court further noted that the <u>Richardson</u> affidavit did not supply corroborating evidence, such as that found in other cases where independent police investigation established that the person who allegedly sold the drugs to the informant was the lessor, owner or resident of the apartment.

Here, the affidavit alleges only a single buy.  It does not allege any facts to support an inference that 1420 Staples Street #3 was the center of ongoing illicit drug business.  There is nothing in the affidavit to indicate that the informant, while making the single purchase, observed other narcotics or narcotics paraphernalia such as packaging materials, scales or firearms.  There is also no description of the individual who allegedly sold the crack cocaine to the informant or nexus of that individual to 1420 Staples Street #3.  Thus, there is nothing in the affidavit to indicate that the seller was anything more than a casual visitor or temporary user of 1420 Staples Street #3.  The affidavit makes no reference to the informant having purchased from the residents

3

or occupants of 1420 Staples Street #3 nor of any other relationship of the defendant to the premises.

The flimsiness of the allegations in the affidavit in this case is striking when compared to those present in reported cases which have upheld search warrants based on controlled buys in conjunction with other corroborating circumstances. See Jones v. United States, 362 U.S. 257 (1960) (informant indicated defendants kept "ready supply" of heroin in their bedroom in a specific described location in bedroom; informant had made several purchases from said location in the past; affiant has also received information from other sources that named defendants, who resided in said apartment, were engaged in drug trafficking); United States v. Pigrum, 922 F.2d 249 (5th Cir. 1991) (agents immediately proceeded to get search warrant after controlled purchase and searched within two hours of purchase; purchase made from residence of identified individual; police officers listening to purchase via transmitter); United States v. Romo, 914 F.2d. 889 (7th Cir. 1990) (purchase made from residence of defendant, who was identified by informant; purchase also made from defendant's business; informant observed large quantity of drugs and drug paraphernalia within both business and residence within 72 hours of warrant application); United States v. Harper, 802 F.2d. 115 (5th Cir. 1986) (affiant had corroborated informant by surveilling defendant's motel room, where purchase was made, and had seen several known drug dealers and users enter room; informer indicated he saw quantities of narcotics in the room other than that which he purchased; purchase made within 24 hours of issuance of warrant; informant within view of affiant from time of initial pat-down until his return, except when in motel room); United States v. Moreno, 758 F.2d. 425 (9th Cir. 1985) (purchase made from named individuals; investigation showed "heavy foot traffic" in and out of defendant's apartment;

further corroboration from four anonymous telephone callers reporting suspicion of drug trafficking at defendant's apartment; defendant had previously told police that a robbery at his apartment was in retaliation for a "drug rip-off"); United States v. Thompson, 751 F.2d. 300 (8th Cir. 1985) (informant had indicated that he had observed named individual selling drugs in defendant's residence, that defendant had a firearm, that the defendant sells drugs on a regular basis from the apartment, and that the defendant lives in the apartment with a black female exotic dancer; affiant had corroborated many details and obtained other corroborating information concerning defendant's relationship to apartment); United States v. Rodgers, 732 F.2d. 625 (8th Cir. 1984) (within 72 hours informant had been in defendant's residence and observed large quantities of cocaine; informant later made controlled buy directly from defendant in defendant's bedroom; officers had received prior information that defendant was selling large quantities of cocaine; other officers had made other purchases of cocaine from defendant).

In contrast to these cases, the affidavit here alleges only a single purchase from an individual who happened to be near the described location on only a single occasion, with no additional corroboration.  This is insufficient to establish probable cause to issue a warrant to search that location.

## II.     UNITED STATES V. LEON

In United States v. Leon, 468 U.S. 897 (1984), the court held the exclusionary rule did not bar introduction of evidence obtained in reasonable reliance on a search warrant issued by a neutral magistrate but later found to be invalid for lack of probable cause.  Defendant submits that Leon does not stand as authority for resuscitation of the otherwise invalid search warrant in this case.

The good faith exception in Leon does not apply: (1) where the requesting officer recklessly misleads the magistrate; (2) where the magistrate abandons his traditional role; (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) where the warrant itself is so fatally deficient for, among other things, failing to particularize the things to be seized, that the officers cannot reasonably presume it to be valid.  468 U.S. at 923 (citation omitted).

Several circuits have refused to routinely apply the Leon good-faith exception.  See United States v. Barrington, 806 F.2d 529 (5th Cir. 1986) (Leon inapplicable where warrant based on "bare bones affidavit" and officer' reliance thereon not objectively reasonable); United States v. Jackson, 818 F.2d 345 (5th Cir. 1987) (Leon inapplicable where affidavit "totally lacking in indicia of reliability" and therefore a "bare bones affidavit."); United States v. Fuccillo, 808 F.2d 173 (lst Cir. 1987) (Leon inapplicable where officers reckless in preparing affidavit); United States v. Leary, 43 Crl. 2140 (10th Cir. 1988) (warrant which was overbroad due to insufficient description of items to be seized not saved by Leon as agents cannot reasonably rely on such a warrant); United States v. Crozier, 777 F.2d 1376 (9th Cir. 1985) (search warrant authorizing a general search facially overbroad and not saved by Leon and executing officer could not act in good faith and in reasonable reliance thereon); United States v. Strand, 761 F.2d 449 (8th Cir. 1985) (Leon inapplicable where search went beyond face of warrant).

Defendant submits that the affidavit in this case is indeed nothing more than a "bare bones" affidavit, whose indicia of probable cause is so lacking as to negate any assertion that it was acted upon in good faith.

6

## III.    THE SEARCH OF THE PREMISES EXCEEDED THE SCOPE OF THE WARRANT

The Fourth Amendment further provides:

. . . and no Warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the person or things to be seized.

Even if a warrant is valid, "the particularity requirement seeks to assure that those searches deemed necessary should be as limited as possible." United States v. Heldt, 668 F.2d 1238, 1256 (D.C. Cir. 1981). The importance of the particularity requirement cannot be overstated, for "[w]hen investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." Id.

The particularity requirement signifies that "the authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places." Heldt at 1262; see also, Keiningham v. United States, 287 F.2d 126, 129 (D.C. Cir. 1960); United States v. Principe, 449 F.2d 1135, 1137 (1st Cir. 1974). In the context of attics and basements, whether the warrant specifically mentions that an attic or basement is to be searched is a key element in whether the particularity requirement of the Fourth Amendment has been met. See United States v. King, 227 F.3d 732, 750-52 (6th Cir. 2000) (holding that officers exceeded the scope of a warrant in searching the basement area of an apartment where warrant failed to specifically allow for search of basement); United States v. Premises and Real Property with Bldgs.,

7

<u>Appurtenance and Improvements at 500 Delaware Street, Tonawanda, New York</u>, 113 F.3d 310, 313 (2d Cir. 1997) (finding search of attic was permissible when warrant specifically stated subject of search was "upper left apartment and attic"); <u>United States v. Evans</u>, 320 F.2d 482, 483 n.1 (6th Cir. 1963) (search of attic valid where search warrant stated: "the specific portion of the building to be searched is the southern portion of the building . . . including the basement and attic portion thereof").

In this case, the officers exceeded the scope of the warrant when they searched the attic of 1420 Staples Street #3. The search warrant describes the subject of the search as "the entire premise known as Apartment 3 inside of 1420 Staples Street, upstairs left apartment, Northeast, Washington, D.C." <u>Attach. 1</u>. It specifically targets only apartment #3. There is a glaring void of any mention of an attic. The search was deliberately limited to apartment #3, and it did not extend to the attic.

Because the officers exceeded the scope of the warrant and failed to comply with the particularity requirement of the Fourth Amendment, all evidence recovered as a result of the illegal search must be suppressed.

## IV.    THE EVIDENCE MUST BE SUPPRESSED FOR FAILURE TO COMPLY WITH THE PROVISIONS OF 18 U.S.C. 3109

The defendant also alleges that the police officers executing the search warrant failed to comply with the "knock and announce" provisions of 18 U.S.C. 3109, which only permits officers to force entry to execute a search warrant after having given notice of their authority and purpose and having been refused admittance.[1]

---

[2]    Defendant understands that the D.C. Circuit indicated in <u>United States v. Southerland</u>, 466 F.3d 1083 (D.C. Cir. 2006) that the application of the exclusionary rule

8

**V.    ALL STATEMENTS MADE BY MR. KNIGHT ON FEBRUARY 2, 2007, MUST BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARY AND MADE IN VIOLATION OF <u>MIRANDA</u>.**

The use of any statements must be suppressed because any such statements were the fruit a violations of Mr. Knight's Fourth Amendment rights.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).  As set forth above, the search warrant executed by the officers in this case lacked probable cause.  Furthermore, the officers failed to properly knock and announce their authority and purpose before entering the home at 1420 Staples Street, N.E, nor did they have consent to search.  Any statements were the fruits of this illegal search.

The statements also must be suppressed because they were obtained in violation of Mr. Knight's Fifth Amendment rights.  The Supreme Court has held that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the [Fifth Amendment] privilege against self-incrimination is jeopardized."  <u>Miranda v. Arizona</u>, 384 U.S. 436, 478 (1966).  In order to protect the privilege, the Supreme Court set forth procedural safeguards.  The safeguards require that prior to custodial interrogation an individual must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  <u>Id</u>. at

---

to statutory knock-and-announce violations may not be applicable; however, he reserves this issue for review by the United States Supreme Court.

9

479.

Statements made in response to custodial interrogation may only be used against a defendant if the defendant has been given the <u>Miranda</u> warnings and subsequently makes a knowing and intelligent waiver of these rights. <u>Id</u>. The government bears the burden of demonstrating that the <u>Miranda</u> warnings were given and that the defendant has made a knowing and intelligent waiver. <u>Id</u>.

The elements of a <u>Miranda</u> violation are present in this case. At the time the statements were allegedly obtained from him, Mr. Knight was in custody and had been arrested, and the statements were made in response to questioning by police officers. At the time that the statements were made, Mr. Knight had not made a knowing and intelligent waiver of his Fifth Amendment rights. The statements were therefore taken in violation of these rights and must be suppressed.

Finally, the statements obtained from Mr. Knight must be suppressed because they were not made voluntarily and, therefore, were obtained in violation of Mr. Knight's Fifth Amendment rights. The voluntariness of a statement "is to be judged on the totality of the circumstances" under which it is made. <u>Wilkerson v. United States</u>, 432 A.2d 730, 734 (D.C. 1981), <u>cert</u>. <u>denied</u>, 454 U.S. 1090 (1981). "A defendant's statement shall be deemed voluntary if the totality of the circumstances show it to be the 'product of an essentially free and unconstrained choice by the maker.'" <u>Jackson v. United States</u>, 404 A.2d 911, 923 (D.C. 1979) (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). The totality of the circumstances surrounding Mr. Knight's interrogations rendered his statements involuntary. The statements are, therefore, inadmissible for all purposes, including impeachment. <u>Mincey</u>, 437 U.S. at 398.

**CONCLUSION**

For the foregoing reasons, and any other reasons that the Court may deem just and reasonable, Mr. Knight requests that the Court suppress the physical evidence recovered during the search and all statements made by Mr. Knight on February 2, 2007, along with any other evidence or statements obtained by the officers in violation of the Fourth and Fifth Amendments.  Mr. Knight respectfully requests an evidentiary hearing on this motion.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender


_____/s/_____
RITA BOSWORTH
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA )** | |
| ) | **Cr. No. 07-081 (CKK)** |
| **v.** ) | |
| ) | |
| **DARRYL KNIGHT** ) | |
| _____) | |

**ORDER**

Upon consideration of defendant's Motion to Suppress Evidence, it is this _____ day of

_____, 2007, hereby

**ORDERED** that defendant's Motion to Suppress is **GRANTED**, and it is further

**ORDERED** that all evidence shall be suppressed.

_____
HONORABLE COLLEEN KOLLAR-KOTELLY
United States District Judge