UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DARRYL KNIGHT,

Defendant.

Criminal No. 07-81 (CKK)
Civil Action No. 10-2012 (CKK)

MEMORANDUM OPINION
(October 9, 2013)

On June 27, 2007, Darryl Knight pled guilty to one count of unlawful possession with intent to distribute fifty (50) or more grams of cocaine base and one count of unlawful possession of a firearm and ammunition by a convicted felon. This Court subsequently sentenced Knight to 121 months' imprisonment and five (5) years supervised release on the drug offense, and 120 months' imprisonment and five (5) years supervised release on the gun offense, to run concurrently. Presently before the Court is Knight's [77] Motion to Vacate Under 28 U.S.C. § 2255, [84] Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255. The Court held an evidentiary hearing regarding the Defendant's motion to vacate on December 11, 2012. Upon consideration of the pleadings,[1] the testimony provided during the evidentiary hearing, the relevant legal authorities, and the record as a whole, the Court finds no grounds for setting aside

---

[1] Although the Court's decision is based on the record as a whole, the Court's analysis focused on the following submissions from the parties, in chronological order of filing: Def.'s Mot. to Vacate, ECF No. [63]; Gov't Opp'n to Mot. to Vacate, ECF No. [70] ("First Gov't Opp'n"); Def.'s Addendum to Mot. to Vacate, ECF No. [71]; Def.'s Suppl. Mot. to Vacate, ECF No. [77]; Gov't Opp'n to Mot. to Vacate, ECF No. [82] ("Second Gov't Opp'n"); Def.'s Reply, ECF No. [83]; Def.'s Mot. to Amend Mot. to Vacate, ECF No. [84]; Def.'s Mot. for an Evid. Hearing, ECF No. [85]; Gov't Opp'n to Mot. to Amend, ECF No. [91]; Def.'s Suppl., ECF No. [97]; Def.'s List of Issues, ECF No. [99]; Gov't's Notice of Filing, ECF No. [102]; Gov't's Resp., ECF No. [104].

the Defendant's plea and sentence. Accordingly, the Defendant's [84] Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255 is GRANTED, Defendant's [85] Motion for an Evidentiary Hearing is DENIED AS MOOT, and Defendant's [77] Motion to Vacate Under 28 U.S.C. § 2255 is DENIED.

## I. BACKGROUND

On January 25, 2007, the Metropolitan Police Department ("MPD") sought and received a search warrant to search apartment three of 1420 Staples Street, Northeast, Washington, D.C. Gov't's Ex. K (Search Warrant & Aff.), ECF No. [82-11]. The affidavit in support of the search warrant averred MPD met with a confidential informant who claimed to have personal knowledge of narcotics related activity at the relevant address. *Id*. at 2. At some point within the seventy-two hours prior to January 25, MPD arranged and executed a controlled purchase of narcotics by the confidential informant from the residence in question. *Id*. After returning from the apartment, the confidential informant turned over a bag containing a "tan rock substance" which field-tested positive for the presence of cocaine. *Id*. at 2-3. The search warrant sought to recover narcotics (specifically crack cocaine), additional drugs, and a variety of materials associated with narcotics trafficking. *Id*. at 1.

MPD executed the search warrant on February 2, 2007 at approximately 7:35 P.M. 6/27/12 Tr. (Plea Hearing) at 16:12-22. The Defendant, his girlfriend, the Defendant's great nephew, and Defendant's infant son were present in the apartment at the time of the search. *Id*. at 16:16-21. In the apartment proper, MPD recovered marijuana, crack cocaine, and a digital scale, and $1,267.56 in United States currency. *Id*. at 16:22-17:12; 18:23-25. MPD also discovered a hatch in the ceiling of the closet in Defendant's bedroom which led to the attic. *Id*. at 17:13-16. Reaching into the attic area from the opening, MPD further recovered a plastic bag

containing 340.5 grams of crack cocaine, 82.1 grams of marijuana, a loaded .9 millimeter Beretta handgun, a loaded .9 millimeter Curtelli handgun with an extra magazine, and approximately $8,000 in United States currency. *Id*. at 17:17-18:22. Laboratory analysis confirmed the composition and weight of the drugs. *Id*. at 19:1-13.

On March 22, 2007, the Grand Jury returned an indictment charging Defendant with (1) unlawful possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii); (2) unlawful possession with intent to distribute cannabis in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D); (3) using, carrying, and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and (4) unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year. Indictment, ECF No. [1], at 1-3. Defendant's counsel, Rita Bosworth and Michelle Peterson of the Federal Public Defender's Office for Washington, D.C., filed a motion to suppress, arguing the search warrant did not establish probable cause. Def.'s Mot. to Suppress, ECF No. [13]. Specifically, counsel argued that a single buy from an unnamed informant at an unspecified time is insufficient to establish probable cause, the confidential informant did not disclose any evidence of narcotics paraphernalia in the apartment, nor did he or she describe the individual from whom the drugs were purchased or indicate any relationship between the Defendant and premises searched. *Id*. at 2-4. Defendant's counsel further argued that the officers executing the search warrant exceeded the scope of the warrant when they entered the attic where the majority of the narcotics and the weapons were discovered, and that the officers violated the "knock and announce" requirement of 18 U.S.C. § 3109. *Id*. at 8. In the same motion, counsel also moved to suppress Defendant's statements on the grounds they were obtained in violation of Defendant's *Miranda* rights. *Id*. at 9-10; Def.'s

3

Suppl. to Mot. to Suppress, ECF No. [22], at 2-3. Separately, defense counsel moved to compel disclosure of the testimony the Defendant's girlfriend gave to the Grand Jury. Def.'s Mot. to Compel Grand Jury Test., ECF No. [20].

The Court convened an evidentiary hearing regarding the Defendant's motion to suppress on June 19, 2007. *See generally* 6/19/2007 Tr. In response to an inquiry from the Court, the Government indicated that the parties had not yet engaged in significant substantive plea negotiations. *Id*. at 10:21-11:10.

During the hearing MPD Officer David Wildey testified regarding the search of Defendant's residence, which Officer Wildey helped execute. 6/19/2007 Tr. at 13:16-20:25. The primary question was whether the attic in which most of the narcotics and the weapons were found was accessible from a location other than the Defendant's apartment. Officer Wildey provided extensive testimony describing the configuration of the attic above Defendant's apartment, including the dimensions of the attic, points of access to the attic, layout of insulation, the proximity of the recovered drugs and currency to the hatch in Defendant's closet, and the overall layout of the building in which Defendant's apartment was located. *Id*. at 21:1-66:7. After the conclusion of Officer Wildey's testimony, the Court indicated to the parties that it could not make a decision regarding Defendant's motion to suppress the evidence seized from the attic absent additional information regarding whether or not the attic was accessible from any other apartment in the building. *Id*. at 66:13-67:15; 70:9-22. The Court granted the parties a one-day continuance to obtain additional information, but continued to hear testimony from MPD Officer Sarah Hoffman regarding the circumstances surrounding the statements made by the Defendant during the search of his residence. *Id*. at 73:10-90:5. MPD Officer Ilah White, the affiant for the affidavit in support of the search warrant, further testified about the execution

of the search warrant, including Defendant's statements. *Id*. at 93:2-106:10. At the conclusion of the Officers' testimony, Ms. Bosworth presented arguments to the Court regarding why the statements from the Defendant the Government sought to introduce were involuntary. *Id*. at 107:1-109:13; 112:4-113:9.

Upon reconvening the hearing on June 20, 2007, the Government recalled MPD Officer Wildey, who had returned to the apartment building after the hearing recessed on June 19. 6/20/2007 Tr. at 5:12-19. Officer Wildey testified regarding his observations as to the layout of the apartment building and the attic. *Id.* at 5:20-11:22. Officer Wildey indicated that, in his opinion, if there was an entrance to the attic from the other second floor apartment, that is, apartment four, one would not be able to access the area in which the contraband was found due to the placement of a beam in the attic. *Id.* at 11:23-16:25; 22:7-13; 22:14-25. The Government indicated that the landlord for the apartment building would later be available to testify that one could access the attic from a hatch on the balcony of apartment four, but that hatch had been sealed, and there was no other access into the attic from apartment four. *Id.* at 58:23-59:20. The Court recessed the hearing for the day, and indicated the hearing would resume the following day at which point the landlord an another MPD officer involved in a subsequent search of apartment three would testify. *Id.* at 59:16-60:11.

The Court reconvened the hearing for a third day on June 21, 2007, at which time the parties asked the Court to postpone the hearing so as to allow the parties to continue plea negotiations. 6/21/2007 Tr. at 2:21-3:7. Pursuant to a plea agreement, the Defendant pled guilty to counts one and four of the indictment on June 27, 2007. Plea Agreement, ECF No. [37], at 1. For sentencing purposes, Defendant agreed as part of the plea agreement he would be accountable for 340.574 grams of crack cocaine and 98.87 grams of marijuana. *Id*. The Court

sentenced Defendant to 121 months imprisonment on count one and 120 months on count four, to run concurrently. 11/28/2007 J. at 3.

Knight filed a Notice of Appeal on December 10, 2007, but voluntarily dismissed the appeal before briefing. *See* 10/09/09 Order, ECF No. [62] (granting Defendant's motion to dismiss appeal). Knight filed an initial Motion to Vacate on March 10, 2010. Def.'s Mot. to Vacate, ECF No. [63]. The Government responded to the Defendant's motion and the Defendant sought to supplement his motion, but before the Court reached the merits of the motion, Knight moved to dismiss the motion without prejudice. *See* Def.'s Mot. to Dismiss Mot. to Vacate, ECF No. [73]. The Court granted the Defendant's motion to dismiss and dismissed the Defendant's motion to vacate without prejudice. 6/28/10 Order, ECF No. [76]. Apparently unaware that the Court had granted his motion to dismiss, Knight filed a "supplement" to his original motion to vacate, incorporating by reference the grounds for relief asserted in the original motion. Def.'s Mot. to Vacate, ECF No. [77]. The Government filed an opposition responding to all of the allegations in Petitioner's original and supplemental motions, and Petitioner filed a reply. Knight further filed a Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255 and Motion for an Evidentiary Hearing, seeking to attach Petitioner's affidavit and several pictures to the Motion to Vacate and requesting an evidentiary hearing. The Court subsequently appointed counsel to represent the Defendant for purposes of the present motion to vacate. After additional filings from the parties regarding the scope and merits of the Defendant's claims, the Court held an evidentiary hearing on December 11, 2012, during which the Defendant and his former trial counsel, Rita Bosworth and Michelle Peterson, and his former appellate counsel, Mitchell Seltzer, testified.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's

performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Id*. at 692. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### III. DISCUSSION

Across four pleadings Defendant raises over two dozen arguments in support of his contention that the representation provided by both his trial and appellate counsel was constitutionally deficient. At the outset, the Court notes that after observing the demeanor of Defendant and Defendant's former counsel and weighing their credibility, the Court credits the

testimony of Ms. Bosworth, Ms. Peterson, and Mr. Seltzer. The Court will address Defendant's contentions according to the various stages of the proceedings. Ultimately, none of the Defendant's arguments have merit.

   *A.   Pretrial Matters*

Beginning with the Defendant's claims relating to general pretrial matters, the Defendant asserts that counsel erred in failing to challenge the fact no warrant was issued for Defendant's arrest, failing to request a probable cause hearing, and failing to move to dismiss the indictment. In this case, Defendant was arrested pursuant to the indictment returned by the Grand Jury. Indictment, ECF No. [1]. In the context of a criminal case "the return of an indictment conclusively establishes probable cause." *Moore v. Hartman*, 571 F.3d 62, 68 (D.C. Cir. 2009); Fed. R. Crim. P. 5.1(a)(2). No arrest warrant was needed for the Defendant's arrest, and any request for a probable cause hearing would have been futile in light of the indictment. 12/11/12 Tr. at 88:8-16 (R. Bosworth) ("[W]hen I received his case he had already been indicted, and so there would be no basis for a preliminary hearing. And I believe that he actually came to court pursuant to a summons, in which case there would be no arrest warrant."); Gov't's Ex. M (Decl. of M. Peterson) at ¶ A (averring there was "no basis" for requesting a preliminary hearing or challenging the lack of an arrest warrant).

The Defendant's claim that counsel should have moved to dismiss the indictment, as set forth in his pleadings, is vague and conclusory, and thus insufficient to even raise the issue "let alone establish" ineffective existence of counsel. *United States v. Green*, 680 F.2d 183, 190 n.12 (D.C. Cir. 1982). During the evidentiary hearing the Defendant articulated his claim as follows:

> The grand jury indictment came off an illegal search warrant, illegal seized search warrant. And if she would have pressed -- if she would of had me plead my suppression hearing and my suppression motion that she filed that I ain't know

9

>about, and I would have won it, the indictment would have been suppressed and then squashed.

12/11/12 Tr. (D. Knight) at 30:12-17. Thus, the Defendant's claim regarding the indictment is duplicative of his claim arising out of the motion to suppress filed by Ms. Bosworth and Ms. Peterson. As set forth below, that claim is meritless. Ultimately Ms. Bosworth and Ms. Peterson each indicated that in their professional opinions, there was no basis on which to attack the validity of the indictment, and the Court agrees. Gov't's Ex. A (Bosworth Decl.) ¶ A; Peterson Decl. ¶ A.

The Defendant faults his counsel for failing to challenge the lack of identification evidence. The Defendant appeared to argue at the evidentiary hearing that this claim arises out of the fact no one identified the Defendant as the individual who sold narcotics to the confidential informant. 12/11/12 Tr. (D. Knight) at 28:15-16. Ms. Peterson and Ms. Bosworth averred that they elected not to challenge this issue because the search warrant was not required to identify the person who sold the narcotics to the confidential informant, and in any event counsel challenged the vague statements in the search warrant regarding the controlled purchase in the motions to suppress filed by counsel. Bosworth Decl. ¶ D(1)-(2); Peterson Decl. ¶ D(1)-(2). Accordingly, counsel's failure to challenge the lack of identification evidence from the confidential informant did not fall below objective standards of reasonableness and thus did not constitute constitutionally defective representation.

The Defendant further suggests that trial counsel erred by failing to review discovery provided by the Government. Ms. Bosworth testified that she not only reviewed the discovery in this matter, but she also went over the discovery materials with the Defendant. 12/11/12 Tr. 88:17-24. Likewise, Ms. Peterson averred that she and Ms. Bosworth reviewed all of the discovery materials provided by the Government and went over those materials with the

Defendant. Peterson Decl. ¶ B.

Elsewhere in his pleadings the Defendant contends his counsel was ineffective for failing to challenge the fact that no drugs were recovered from the confidential informant. As the search warrant indicates, police in fact recovered from the confidential informant a substance that field tested positive for the presence of cocaine. *See also* Bosworth Decl. ¶ D(3) (averring "there was no basis to make [the] argument" that no drugs were recovered from the confidential informant because "the affidavit stated that the police recovered drugs from the CI that field-tested positive for cocaine," and counsel "was aware of no evidence to the contrary"). As set forth below, defense counsel moved to suppress the search warrant on several grounds, including the lack of specificity regarding the controlled purchase. Counsel's failure to raise an argument that is facially meritless does not constitute ineffective assistance of counsel. To the extent the Defendant's argument concerns the narcotics recovered from the search of the Defendant's apartment, the Government produced laboratory analysis to defense counsel, which was reviewed with the Defendant and set forth in the statement of offense. Bosworth Decl. ¶ H; Peterson Decl. ¶ H.

The Defendant further argues that his counsel was ineffective in failing to litigate the fact that the Government did not provide a laboratory analysis of the weight and purity of the drugs recovered from the confidential informant. The search warrant indicated the drugs received by the confidential informant field-tested positive for the presence of cocaine. Ms. Bosworth and Ms. Peterson concluded that, in their professional judgment, there was no basis for challenging the lack of laboratory analysis because there is no requirement that the search warrant rely on laboratory analysis. Bosworth Decl. ¶ D(1); Peterson Decl. ¶ D(1). The Defendant fails to identify any legal relevance of laboratory analysis of the narcotics recovered from the

confidential informant. Counsel's decision not to challenge the lack of laboratory analysis was a reasonable strategic decision and does not constitute ineffective assistance of counsel.

>    B.    *Search Warrant & Motion to Suppress*

Most of Defendant's allegations concern counsel's strategy challenging the validity of the search warrant and counsel's conduct during the hearing on the Defendant's motions to suppress. The Defendant contends that his counsel erred in failing to argue that the police report gave conflicting accounts of the color and/or appearance of the drugs recovered from the confidential informant and from Defendant's residence pursuant to the search warrant. Ms. Bosworth explained that in her professional opinion, "this was not an issue to be raised during a motions hearing, but rather, even assuming a relatively minor discrepancy of this type would be used at all, it would be better utilized during a trial to attempt to impeach the police officer's testimony with the discrepancy in the police reports," thus Ms. Bosworth "did not want to reveal this line of questioning prior to trial." Bosworth Decl. ¶ F; *accord* Peterson Decl. ¶ E. Defendant's counsel decision not to challenge the search warrant on this basis was a reasonable strategic decision, particularly in light of the other grounds counsel raised for suppressing the search warrant.

Defendant next argues that his trial counsel's performance was deficient because counsel failed to move to suppress the search warrant on the grounds that the Defendant was not specifically named in the search warrant. As Defendant's own authority notes, a search warrant need not name a specific individual, but rather must provide "'a particular description of the things to be seized.'" *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Ms. Bosworth and Ms. Peterson each indicated that there was no legal basis to raise this argument because a search warrant does not have to name the defendant, and the Defendant offers no authority to the contrary. Bosworth

Decl. ¶ D(1); Peterson Decl. ¶ D(1).

Defendant further claims that his counsel should have challenged the lack of information in the search warrant affidavit regarding when the controlled purchase from Defendant's apartment took place. Defendant's counsel actually raised this argument in the motion to suppress filed on the Defendant's behalf. Def.'s Mot. to Suppress at 2 ("[A]n allegation of a single sale at an unspecified time by an unspecified person up to three days prior to issuance of the warrant does not establish probable cause to believe that there are narcotics presently in that location."). Likewise, the Defendant faults his counsel for failing to argue, when they in fact argued to the Court, that the affidavit in support of the search warrant was insufficient because it "allege[d] only a single buy," and there was "no description of the individual who allegedly sold the crack cocaine to the informant or nexus of that individual to 1420 Staples Street #3." *Id.* at 3.

The remaining issues Defendant raised regarding the pretrial motion practice are too vague and conclusory to raise any actual issue for the Court to resolve. The Defendant's sixth contention states only that his counsel "failed to argue against violation of Fourth Amendment [r]ights." A generalized allegation such as this cannot form the basis for relief, especially in light of the fact Defendant's counsel filed multiple motions challenging the admissibility of both the physical evidence and Defendant's own statements. Equally as vague, the Defendant suggests his counsel failed to argue that false statements were "knowingly and intentionally" included in the search warrant affidavit. Defendant simply asserts his counsel should have sought a *Franks* hearing regarding the affidavit provided in support of the search warrant. "A defendant is entitled to [a *Franks*] hearing only if his attack on the accuracy of the affidavit is 'more than conclusory' and is accompanied by 'allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *United States v.*

13

*Gaston*, 357 F.3d 77, 80 (D.C. Cir. 2004). The Defendant argued during the evidentiary hearing that "[t]he false statement . . . in the affidavit is about the drug sale. I never sold to no CI." 12/11/12 Tr. at 23:12-14. The Defendant also argues the police officer's statement that he observed the confidential informant exiting the Defendant's apartment was false because the police office could only have observed the confidential informant leaving the apartment building as a whole. *Id.* at 23:12-18. With respect to the first issue, as previously indicated, the Defendant's counsel was not aware of any evidence contrary to the statement in the search warrant affidavit that the confidential informant provided the police officer with narcotics acquired during a controlled purchase from the Defendant's apartment. Ms. Peterson and Ms. Bosworth averred that in their professional judgment there was no basis for requesting a *Franks* hearing. Bosworth Decl. ¶ G; Peterson Decl. ¶ G.

The Defendant further argues that the counsel failed to investigate the apartment subject to the search warrant after being ordered to conduct an investigation by the Court. Defense counsel disputes the Defendant's contention that the Court ordered counsel to conduct an investigation, but in any event aver that they utilized a defense investigator to investigate whether there was any other access point to the attic, and that the investigator conducted an investigation, including by taking measurements and pictures of the attic. Bosworth Decl. ¶ B; Peterson Decl. ¶ B. The Defendant likewise argues without elaboration that his counsel failed to call an important witness during the hearing regarding the Defendant's motion to suppress. The Defendant indicated that he gave the name of the alleged confidential informant to Ms. Bosworth, but she declined to call the individual as a witness. 12/11/12 Tr. 28:21-29:10. Ms. Bosworth and Mr. Peterson indicated that Mr. Knight did not provide counsel with the names of any particular witnesses, but counsel nonetheless spoke with the Defendant's girlfriend, and

14

utilized their investigator to attempt to locate other witnesses who could be helpful to Mr. Knight. Bosworth Decl. ¶ C; Peterson Decl. ¶ C. The Court credits this testimony. Moreover, Defendant's counsel indicated that because the evidentiary hearing had not yet concluded at the time the Defendant elected to plead guilty, counsel had not made a final decision as to who might testify during the hearing. *Id.* To the extent the Defendant challenges defense counsel's decision not to interview the police officers involved in the pre-trial investigation, Ms. Peterson and Ms. Bosworth indicated that, using their professional judgment, counsel elected not to question the police officers because (1) the discovery materials reflected the officers' likely answers; and (2) counsel did not want the prosecution to learn of the Defendant's strategy. Bosworth Decl. ¶ C; Peterson Decl. ¶ C. On this record, the Court finds counsel's decision regarding what witnesses to question and call during the evidentiary hearing was a reasonable strategic decision.

Along these same lines, the Defendant contends that his counsel failed to "argue important facts" during the suppression hearing. Defendant never identifies the "important facts" omitted by defense counsel, therefore the Court cannot find counsel's performance on this basis was deficient. *Green*, 680 F.2d at 190 n.12. Moreover, the hearing regarding the Defendant's motions to suppress was adjourned before defense counsel had an opportunity to fully present its arguments, thus counsel cannot be faulted for its failure to raise any specific arguments during the hearing. Bosworth Decl. ¶ D(1); Peterson Decl. ¶ D(1).

The Defendant also argues that counsel erred by failing to ask the Government to produce a police report concerning the controlled purchase of narcotics by the confidential informant, and for failing to challenge the Government's failure to produce any such report. Ms. Peterson and Ms. Bosworth indicated that, in their professional opinion, they did not have a sufficient basis for filing a motion to compel the production of any such report because there was no indication the

Government intended to call the confidential informant as a witness at trial. Bosworth Decl. ¶ F; Peterson Decl. ¶ F. The Defendant offers no evidence or argument to the contrary. Therefore, counsel's failure to file a motion relating to the police report (or lack thereof) regarding the controlled purchase did not constitute ineffective assistance of counsel.

Finally, in an "addendum" to his initial motion the Defendant asserts that counsel erred in failing to advise Defendant that the Court had granted the motion to suppress on May 21, 2007. The Court did not issue a ruling on the motion to suppress. 6/27/12 Tr. at 8:18-25.

### C. Plea Negotiations

With respect to the plea negotiations in this case, the Defendant alleges that his counsel admitted on the record that she could have but did not obtain a more favorable plea offer for the Defendant. There is no support in the record for this accusation. During the sentencing hearing, Ms. Bosworth stated she was not aware the Government would seek a sentence at the high end of the guidelines range. 11/15/2007 Tr. at 6:9-19. This statement does not provide any indication that Defendant's counsel could have obtained or that the Government would have agreed to a more favorable plea agreement. Moreover, the record indicates Defendant's counsel attempted to negotiate a different approach to a plea agreement than initially offered by the Government (although the Court is not aware of which approach the parties eventually took). 6/21/2007 Tr. at 4:11-18. Ms. Bosworth denied making any statement to the effect that she could have secured a more favorable plea agreement. Bosworth Decl. ¶ I. To the contrary, Ms. Bosworth indicated that the plea offer ultimately accepted by the Defendant was the best offer the Government made, and she did not believe that counsel could have obtained any more favorable terms for a plea agreement. *Id.*; *accord* Peterson Decl. ¶ I. Counsel's performance as to the plea negotiations in this respect was not deficient.

The Defendant also argues that Ms. Bosworth and Ms. Peterson coerced Defendant into accepting the plea offer before the Court issued a decision on Defendant's motion to suppress. Specifically, the Defendant claims that counsel (1) informed Defendant that if he proceeded to trial and lost, he would face a mandatory life sentence; and (2) informed Defendant that if Defendant succeeded with the motion to suppress, the Government would simply re-indict Defendant for conspiracy to sell narcotics for the controlled purchase. Ms. Bosworth and Ms. Peterson indicated that they discussed the pros and cons of a guilty plea with the Defendant, but prior to June 21, 2007, the Defendant indicated he was not interested in pleading guilty. Bosworth Decl. ¶ J; Peterson Decl. ¶ J. Ms. Bosworth and Ms. Peterson indicated that on his own accord, prior to the resumption of the motions hearing on June 21, the Defendant, on his own initiative, indicated that he wanted to plead guilty. *Id.* Defense counsel thus negotiated a plea agreement with the prosecution. *Id.* Neither Ms. Bosworth nor Ms. Peterson ever represented to the Defendant that he would face a life sentence if convicted at trial. *Id.* In fact, prior to the plea hearing, Ms. Bosworth asked the United States Probation Office to conduct a criminal history calculation for the Defendant, which determined that Defendant Knight fell within Criminal History category II, and was not considered a career offender. *Id.* Furthermore, neither counsel claimed that the Defendant would be re-indicted for conspiracy if the Court ruled in the Defendant's favor on the pending motions to suppress. *Id.* The Court finds that trial counsel did not coerce the Defendant into pleading guilty.

  D. *Sentencing*

Defendant also takes issue with several aspects of his counsel's performance during sentencing. The Defendant first claims his counsel's performance during the sentencing proceedings was deficient because counsel failed to challenge the fact that no drugs were

recovered from the confidential informant. The Defendant contends that absent drugs being recovered from the confidential informant, at sentencing the Court could not hold the Defendant accountable for a specific amount of narcotics. This argument is unpersuasive for two reasons. First, the record indicates MPD did recover narcotics from the confidential informant after the controlled purchase, and defense counsel had no evidence to the contrary. *See*, *e.g.*, Gov't Ex. K at 2 (noting the substance recovered from the confidential informant tested positive in the field for cocaine). Second, the premise of Defendant's argument is false: Defendant was sentenced based on the amount of cocaine base recovered in his apartment, which Defendant stipulated to in the plea agreement, not the drugs recovered from the confidential informant. Plea Agreement, ECF No. [37], at 1. Counsel's performance on this issue was not deficient.

The Defendant also contends that his defense counsel should have contested the application of the ten-year mandatory minimum to his case. Pursuant to the plea agreement, Defendant pled guilty to Count One of the indictment, unlawful possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), and Count Four, unlawful possession of a firearm and ammunition by a person convicted of crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. 922(g)(1). At the time of Defendant's sentencing, section 841(b)(1)(A)(iii) provided for a ten-year mandatory minimum for unlawful possession with intent to distribute "50 grams o more of a mixture or substance . . . which contains cocaine base." Defendant acknowledged the mandatory minimum in the plea agreement, and several times before the Court accepted Defendant's guilty plea, Ex. E at 27:27:17-28:6; 28:12-29:12; 34:17-22. Prior to the plea hearing, the defense counsel advised the Defendant that the offense to which he was going to plead guilty carried a ten-year mandatory minimum. Bosworth Decl. ¶ K.

The Defendant also takes issue with his counsel's purported failure to dispute the three point enhancement applied to the sentencing guidelines range in light of Defendant's prior felony conviction. On July 8, 1997, Defendant plead guilty to one count of conspiracy in violation of 18 U.S.C. § 371, threats in violation of 22 D.C. Code § 504(a), and assaulting, resisting, or impeding certain officers or employee in violation of 18 U.S.C. § 111(a)(1). Gov't Ex. N, (7/8/1997 Judgment in a Criminal Case, Case No. 96-cr-202), at 1. Judge Emmet G. Sullivan sentenced Defendant to a total of seventy-two months imprisonment. *Id*. at 2. In this case, the Court ruled prior to the motions hearing that the Government could impeach Defendant with his prior conviction for the conspiracy count, but not the threats or assault counts. 6/18/2007 Order, ECF No. [25]. Defense counsel had no basis in law or fact to challenge the guidelines calculation of Defendant's criminal history, and thus counsel was not ineffective on this ground. Bosworth Decl. ¶ L.

### E. *Appeal*

The Defendant's final claim with respect to his trial counsel is that defense counsel failed to file a notice of appeal despite the Defendant's request. The record indicates that on December 10, 2007, Defendant's counsel filed a [50] Notice of Appeal on his behalf. Nearly two years later, Defendant's appellate counsel, Mitchell Seltzer, filed a Motion for Voluntary Dismissal of Appeal. Gov't Ex. I at 1-2. In support of that motion, Defendant submitted a declaration avowing under penalty of perjury that he "[had] decided that it is in my best interest to dismiss the appeal at this time." Gov't's Ex. I (Def.'s Decl. in Support of Voluntary Dismissal) at 4. The Defendant claims that Mr. Seltzer coerced the Defendant into withdrawing his appeal by telling the Defendant that his appeal would not be successful. Mr. Seltzer reviewed the Rule 11 plea colloquy, the terms of the Defendant's sentence, and employed an investigator to determine

19

whether there was any other access to the attic. 12/11/12 Tr. 162:20-163:23. Mr. Seltzer spoke with the Defendant, and discussed the pros and cons of raising ineffective assistance of counsel claims in the context of a direct appeal as compared to a motion to vacate. *Id.* at 164:1-22. The Defendant ultimately agreed that it would be advisable to pursue such claims in the context of a motion to vacate. *Id.* Mr. Seltzer discussed the issue over the phone and in-person with the Defendant. *Id.* at 165:20-167-3. Mr. Seltzer and the Defendant discussed the arguments the Defendant waived during his guilty plea, and the likelihood the Defendant would receive a hearing. *Id.* At the conclusion of their discussions, the Defendant "didn't really hesitate" in signing the affidavit in support of his motion to dismiss his appeal. *Id.* Mr. Seltzer did not coerce the Defendant into dismissing his appeal.

## IV. CONCLUSION

For the foregoing reasons, despite a litany of purported errors by his trial and appellate counsel, the Court finds no reason to set aside the Defendant's guilty plea and sentence. Accordingly, the Defendant's [84] Motion to Amend Motion to Vacate Under 28 U.S.C. § 2255 is GRANTED, the Defendant's [85] Motion for an Evidentiary Hearing is DENIED AS MOOT, and the Defendant's [77] Motion to Vacate Under 28 U.S.C. § 2255 is DENIED. An appropriate Order accompanies this Memorandum Opinion.

                                                                                          */s/*  
                                                                                          **COLLEEN KOLLAR-KOTELLY**  
                                                                                          UNITED STATES DISTRICT JUDGE